Present: Carrico, C.J., Compton, Stephenson,[1] Lacy, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

ROBERT L. SMITH, JR.,

OPINION BY SENIOR JUSTICE HENRY H. WHITING
v.     Record No. 961752          September 12, 1997

KENNETH J. SETTLE, JR., by and through
his father and next friend,
KENNETH J. SETTLE, SR., ET AL.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
LeRoy F. Millette, Jr., Judge


This appeal of consolidated personal injury cases raises
issues involving a so-called high-low agreement, sovereign
immunity, and rulings on jury instructions.

Kenneth J. Settle, Sr., was driving a car on State Route 1
in Prince William County when it was struck in the intersection
of Route 1 and Fuller Road by an ambulance of the Dumfries-
Triangle Rescue Squad, Incorporated. The ambulance was being
driven on Fuller Road by rescue squad member Robert L. Smith,
Jr., with its siren and red lights in operation. At that time,
the traffic light controlling the intersection was green in
Settle's direction and red in Smith's direction. Smith pled
guilty to a reckless driving charge arising from this collision.

Settle and the passengers in his vehicle, Dana Powell-Settle
and their minor children, Dana L. Powell-Settle and Kenneth J.
Settle, Jr., (by their next friend), filed separate personal
injury actions against Smith and the rescue squad. These actions
were "consolidated for all purposes, including trial."

---

[1]Justice Stephenson participated in the hearing and decision of
this case prior to the effective date of his retirement on July 1,
1997.

Pleas of sovereign immunity filed by Smith and the rescue squad were sustained after a pretrial hearing. Hence, the circuit court dismissed the rescue squad as a party defendant and held that Smith could only be liable for "acts or omissions constituting gross negligence."[2]

Following presentation of the testimony at a subsequent jury trial, counsel for the plaintiffs stated that the parties and the primary liability insurance carrier of Smith and the rescue squad had arrived at a high-low agreement. Although the statement was made on the record in the presence of opposing counsel, the court was not present.[3] As counsel for the plaintiffs noted on brief, the agreement was set out in the record "in its entirety." Among other things, the agreement required that the primary carrier pay the plaintiffs $350,000 if the jury returned verdicts for Smith.[4]

Thereafter, the court heard argument on counsel's proposed

[2]This issue was decided by Carleton Penn, Judge Designate.

[3]When it was beneficial to either side's argument not to be bound by the high-low agreement at various times during the course of this prolonged litigation, that side noted the infancy of two plaintiffs and the absence of court approval of the "settlement" under Code § 8.01-424. Our decision makes it unnecessary to consider what impact, if any, this Code section has upon such high-low agreements.

[4]On brief, counsel for plaintiffs notes that if the verdicts were less than $350,000 plaintiffs would nevertheless receive $350,000 and if the verdicts exceeded $1,000,000, the maximum liability of the insured and primary carrier would be $1,000,000, with the plaintiffs reserving their right to assert a claim for the excess against the excess carrier. Additionally, he notes that the plaintiffs would be paid any amount awarded between $350,000 and $1,000,000 and that "[b]oth parties waived any right to appeal."

jury instructions and read the instructions it had granted to the jury. After closing arguments by counsel, the jury deliberated and returned verdicts for Smith.

Later, the plaintiffs refused the primary carrier's tender of $350,000. Thereafter, the defendants filed a motion to enforce the high-low agreement, which the court denied. Instead, the court sustained the plaintiff-passengers' motions to set aside the verdicts and to award a new trial because the jury had been erroneously instructed that the passengers could not recover if the driver of the Settle car was guilty of contributory negligence.[5]

After a second jury failed to agree upon the verdicts at the second trial, a third trial was held in which a third jury returned verdicts for Smith. Overruling the plaintiffs' motion to set aside the verdicts, the court sustained their alternative motions to enforce the high-low agreement and ordered "the defendant insurer" to pay the plaintiffs $350,000, "as agreed by the parties."

Smith appeals that part of the final order enforcing the high-low agreement.[6] The plaintiffs assign cross-error (1) to

---

[5] The court overruled the remaining grounds of the plaintiff-passengers' motion and overruled all grounds of Mr. Settle's motion.

[6] We find no merit in the plaintiffs' contention that Smith has no right to appeal an order which held that the agreement was binding and directed that his primary carrier comply with the high-low agreement. As Smith points out on brief, he is entitled to an ultimate disposition of a case he has won in the trial court, but the final order leaves open the question of his

the sustaining of Smith's plea of sovereign immunity and (2) to the overruling of their motions to set aside the verdicts of the third trial.

Smith contends that he is no longer bound by the high-low agreement because the plaintiffs repudiated the agreement by refusing his primary carrier's tender of $350,000 following the return of the first verdict. The plaintiffs respond that their refusal of the tender was justified under the agreement. We agree with Smith.

Recognizing that there is no explicit provision in the agreement requiring the jury to be "properly instructed on the law," plaintiffs assert that it "was an implicit term of the agreement [and] . . . there was no agreement not to seek post verdict relief in the trial court." In his statement of the terms of the agreement, counsel for the plaintiffs specifically listed a number of terms and conditions relating to a reservation of the plaintiffs' right to seek further recoveries from the defendants' excess liability carrier. However, with regard to the effect of expected verdicts, he said only that counsel on behalf of the parties "have reached an agreement on a high/low with respect to the verdict in the consolidated Settle cases."

Finding nothing in counsel's statement implying that a "properly instructed" jury was part of the agreement or that

---

ultimate liability if his primary carrier did not honor the agreement.

either party could seek post-verdict relief in the trial court, we will not rewrite the agreement to impose provisions that are neither stated nor implied therein. Addison v. Amalgamated Clothing and Textile Workers Union of America, 236 Va. 233, 236, 372 S.E.2d 403, 405 (1988). The plaintiffs' unjustified refusal of the tender prevented performance of the agreement and gave Smith the right to regard it as terminated. Boggs v. Duncan, 202 Va. 877, 882, 121 S.E.2d 359, 363 (1961). Therefore, we conclude that the court erred in enforcing the high-low agreement.

Because the high-low agreement no longer bound Smith at the time of the third trial, we turn to the sovereign immunity issue raised in plaintiffs' assignments of cross-error. Since the circuit court heard the evidence on the issue and sustained the pleas of sovereign immunity, we resolve any conflicting evidence in the light most favorable to Smith, the prevailing party on this issue. See Carmody v. F.W. Woolworth Co., 234 Va. 198, 201, 361 S.E.2d 128, 130 (1987).

As the duty officer of the rescue squad at the time, Smith was responsible for determining which personnel would ride in each ambulance. Smith had more experience and qualifications than personnel assigned to ride in the ambulance described as "rescue squad three." Accordingly, Charles Kenny, the driver of rescue squad three, and Smith agreed that if Kenny's ambulance was dispatched by the Prince William County fire and rescue communications center to the scene of an emergency while Smith

-5-

was away from the station house, Kenny and Smith were to establish radio contact to determine whether Smith would accompany rescue squad three to the emergency.

Smith was away from the station house when he heard on his radio that the rescue squad had been ordered to respond to an emergency on Interstate Highway 95 (I-95) and that rescue squad three was responding. Acting in accordance with the agreement, Smith also responded to the order by driving his ambulance toward I-95 and a location where he hoped to establish radio contact with personnel in rescue squad three. Since rescue squad three "needed personnel with more qualifications," and Smith had such qualifications, he thought he might be compelled to dispatch himself to the scene of the emergency. The collision occurred as Smith was looking down to adjust the channel on his ambulance radio to establish contact with rescue squad three.

The plaintiffs argue that Smith was not entitled to sovereign immunity because: (1) his trip to a location where he could establish radio contact was mere preparation for a possible emergency dispatching; (2) he had not been dispatched to the scene by the county fire and rescue communications center as required by Prince William County Code § 7-29; (3) he was not then responding "to the location of an emergency call" as required by a regulation of the Board of Health; and (4) he was not operating his vehicle with due regard to the safety of persons and property as required by Code § 46.2-920.

However, we think that the evidence sufficiently supports the court's finding that Smith was entitled to sovereign immunity.  The evidence supports a conclusion (1) that Smith's ambulance trip was not mere preparation but an immediate and necessary response to the emergency, and (2) that the trip was made in conformity with the center's dispatch order and in response to the location of an emergency call as required by the county code and health board regulations.[7]  Further, sufficient evidence supports the third jury's factual finding that Smith had complied with his duty not to be grossly negligent, the controlling standard of care in sovereign immunity cases.  Colby v. Boyden, 241 Va. 125, 130, 400 S.E.2d 184, 187 (1991).  Accordingly, we reject the plaintiffs' contentions.

Next, we consider the plaintiffs' argument that the trial court erred in refusing their tendered Instructions 13, 14, 24, and 25, and in granting Smith's tendered Instructions T and U.  Refused Instructions 13 and 14, respectively, stated in effect that Smith was permitted to exceed the speed limit and to proceed through a red light.  However, both tendered instructions had a

_____

[7]Contrary to the plaintiffs' characterization of Smith's trip as "the simple operation of a vehicle in routine traffic," we think the evidence supports a finding that the trip involved the exercise of the discretion and judgment required by a person performing a governmental function in operating a vehicle in response to an emergency.  Compare Heider v. Clemons, 241 Va. 143, 145, 400 S.E.2d 190, 191 (1991) with Colby v. Boyden, 241 Va. 125, 129-30, 400 S.E.2d 184, 186-87 (1991), and National R.R. Passenger Corp. v. Catlett Volunteer Fire Co., 241 Va. 402, 412-13, 404 S.E.2d 216, 221-22 (1991).

proviso that any such conduct could not constitute "a reckless disregard of the safety of persons and property."  The plaintiffs note that this proviso describes "the same kind and degree" of conduct proscribed by Code § 46.2-852, a reckless driving statute, which they assert establishes the applicable standard of care in these cases.

Granted Instructions T and U, respectively, contained similar language regarding speed and proceeding through a red light, but each had a different proviso articulating a different standard for determining a deviation from the degree of care required, namely that Smith was "not grossly negligent."  In Colby, we held that the sovereign immunity doctrine required a showing of gross negligence to establish a violation of the standard of care required of drivers in Smith's situation and that former Code § 46.1-226 (now in substance Code § 46.2-920) did nothing to abrogate that standard.  241 Va. at 130, 132, 400 S.E.2d at 187, 188-89.  For this reason, Instructions 13 and 14 were properly refused and Instructions T and U were properly granted.

Plaintiffs' tendered Instructions 24 and 25, as they were to be amended, provided in effect that Smith owed the duties of keeping his ambulance under proper control and keeping a proper lookout and that if he failed to do so in a grossly negligent manner, "he may be liable . . . in accordance with other instructions of the court."  We do not consider whether these

-8-

instructions were proper statements of the law applicable to this case for the following reasons.

Over Smith's objection, Gary Randolph Pope, a captain in the Fairfax County fire department, was permitted to testify as the plaintiff's expert witness on the factual issue of "the standard of care as it applies to emergency vehicles proceeding through a red light." Thereafter, plaintiffs elicited testimony from Pope that this standard imposed upon the operators of such emergency vehicles the duties of "bring[ing] the vehicle within control before entering the intersection" and of maintaining a proper lookout. Having created factual issues of the existence of these duties, plaintiffs are not permitted to take the inconsistent position that the same issues are matters of law, suitable for jury instructions. See Leech v. Beasley, 203 Va. 955, 961-62, 128 S.E.2d 293, 297-98 (1962). Given these circumstances, we find no error in refusing Instructions 24 and 25.

For the above reasons, (1) we reject the plaintiffs' assignments of cross-error and (2) we will reverse the judgment of the trial court enforcing the high-low agreement and enter final judgment for Smith.

Reversed and final judgment.