PRESENT: All the Justices

LOUISE ROBERTS EURE

                                              OPINION BY
v.  Record No. 011633             JUSTICE DONALD W. LEMONS
                                            April 19, 2002
NORFOLK SHIPBUILDING & DRYDOCK
CORPORATION, INC., ET AL.

              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Everett A. Martin, Jr., Judge

      In this appeal, we consider whether the trial court erred

in finding the language of an agreement to provide health care

coverage to Louise Roberts Eure ("Mrs. Eure") unambiguous and in

not considering parol evidence to determine the intent of the

parties to the agreement.  We further consider whether the trial

court properly dismissed a holding company, United States Marine

Repair, Inc., ("U.S. Marine Repair") as a party in a suit

against its subsidiary, Norfolk Shipbuilding & Drydock

Corporation, Inc. ("Norshipco").

                     I.  Facts and Proceedings Below

      Mrs. Eure entered into an agreement and general release

(the "Agreement") with Norshipco on April 3, 1992.  The

Agreement was part of a settlement of a debt owed to Norshipco

by Charles H. Eure, Jr., Mrs. Eure's deceased husband.  As part

of the Agreement, Mrs. Eure agreed to give up certain valuable

rights and assets owed to her by Norshipco, and Norshipco agreed

to provide Mrs. Eure with health care coverage at Norshipco's

expense for the remainder of her life.

Paragraph 2 of the Agreement provides for Mrs. Eure's health care coverage and states in pertinent part:

> Mrs. Eure will be afforded health care at Norshipco's expense throughout her remaining lifetime, under the existing Norshipco health plan and any future enhancements available to key executives, or any replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco.

At the time the Agreement was made, Mrs. Eure was receiving benefits under two plans. Norshipco provided basic medical insurance through Blue Cross,[1] and also provided an "Officers' Medical Expense Reimbursement Plan" ("reimbursement plan") that paid for certain expenses Blue Cross did not cover.

U.S. Marine Repair acquired Norshipco in October of 1998. Mrs. Eure subsequently received a letter from John Humphreys of Norshipco informing her that as of December 15, 1998, the reimbursement plan was being terminated for all officers.

On February 18, 2000, Mrs. Eure filed an amended motion for declaratory judgment against both Norshipco and U.S. Marine Repair. She requested that the trial court declare:

> [T]hat the coverage promised [to her] under the provisions of paragraph 2 of the Agreement is to be determined by the coverage in effect at the time of the Agreement, and not be diminished or

---

[1] The basic coverage provider was subsequently changed to Sentara.

2

> discontinued in part simply because the executive health plan at that time has subsequently been discontinued by Defendants.

Norshipco filed a motion for summary judgment and alleged that paragraph 2 of the Agreement was clear and unambiguous; therefore, the trial court should not consider parol evidence when interpreting the Agreement. In her brief in opposition to Norshipco's motion for summary judgment, Mrs. Eure asserted that the Agreement "provides her with the medical coverage which was in effect at the time of the Agreement and that the coverage cannot be diminished or discontinued." She maintained that "the agreement [was] clear in this respect." The trial court denied Norshipco's motion for summary judgment because it found that the Agreement was ambiguous. Norshipco subsequently renewed its motion for summary judgment, claiming that "discovery has established that the Plaintiff cannot point to any parol evidence or witness testimony which would clarify the meaning beyond the written words of the instrument." The trial court again overruled the motion.

U.S. Marine Repair filed a demurrer, asserting that it bought the stock of Norshipco on September 30, 1998, and "in essence, is a holding company of the stock of Norshipco as an investor." U.S. Marine Repair explained that Norshipco remains

3

a freestanding legal entity, and U.S. Marine Repair was not a party to the Agreement between Mrs. Eure and Norshipco.

The trial court allowed the introduction of parol evidence at trial to determine the intent of the parties with respect to the health care benefits clause of the Agreement. E. L. Carlyle ("Carlyle"), who was Senior Vice President and Chief Financial Officer of Norshipco in 1992 and signed the Agreement, testified on behalf of Mrs. Eure. In response to the question whether the health care benefits were "supposed to be retractable by Norshipco," Carlyle testified that he "believe[d] it was the intent that Mrs. Eure was to have these benefits for the rest of her life."

Furthermore, during cross-examination of Mrs. Eure, Norshipco admitted two letters into evidence. The first was a letter dated March 23, 1992, to Robert C. Nusbaum ("Nusbaum"), Mrs. Eure's attorney, from Walter B. Martin, Jr. ("Martin"), Norshipco's attorney. The letter outlined the "terms and conditions of the settlement" between Mrs. Eure and Norshipco. With respect to the health care coverage, the letter stated that "Mrs. Eure will be maintained under the Norshipco health care plan, or a plan providing equal coverage, until her death." The second letter was the response from Nusbaum to Martin, dated March 27, 1992. In this letter, Nusbaum informed Martin that "Mrs. Eure and I interpret paragraph #2 of your March 23 letter

4

to require the continuation of coverage of the kind now in force, or the substantial equivalent."

Finally, Ellen Vinck ("Vinck"), Director and Vice President for U.S. Marine Repair, testified as to her interpretation of the Agreement. Vinck reviewed the Agreement at the time U.S. Marine Repair terminated the reimbursement plan. She testified that her "interpretation of the agreement was that Mrs. Eure should have medical coverage at any time as covered by the current plan, and she does. [Her coverage] was not canceled." Vinck further testified that she believed that "the officers medical reimbursement plan [was] a perk." She did not believe that canceling the reimbursement plan violated the Agreement because the basic coverage, under Sentara, was not canceled.

In a letter opinion, the trial court recognized that it had "previously held the [health care benefits] clause to be ambiguous, but on further consideration," the trial court did "not believe it" was ambiguous; therefore, it did not consider the parol evidence in reaching its decision. The trial court interpreted the medical benefits provision of the Agreement as follows:

> The clause at issue allows a change in
> benefits but it must be under a
> "replacement plan which provides to her
> coverage substantially equivalent to that
> which would be available if Mr. Eure were
> living and holding office as President of
> Norshipco." I find that the clause refers

5

to future events, and that it ought to be construed as if Mr. Eure were the president of Norshipco at the time the replacement plan is provided. The term "replacement plan" in this context necessarily suggests a possible future event. The phrase "would be available" when used with "replacement plan" indicates a possible future condition. If the intent had been to require that a replacement plan be substantially equivalent to present coverage, a present tense verb, not a conditional tense, would have been used. Such an intent could have been stated ". . . coverage substantially equivalent to that which she now has."

Accordingly, the trial court held that Norshipco was not required to continue to provide Mrs. Eure with the health care benefits under the company's former reimbursement plan after the date that plan was terminated. The trial court further held that U.S. Marine Repair was not liable for the debts of Norshipco because there was "insufficient evidence to apply the alter ego doctrine." Mrs. Eure subsequently filed a motion to reconsider, which the trial court overruled. On April 25, 2001, the trial court entered a decree memorializing its decision. Mrs. Eure appeals the adverse ruling of the trial court.

On appeal, Mrs. Eure argues that the language in the Agreement was ambiguous and the trial court should have considered parol evidence to determine the intent of the parties. She further argues that the trial court erred in ruling that Norshipco was not required to provide her with

6

benefits "equivalent" to those provided under the former reimbursement plan. Finally, she claims that the trial court erred in dismissing U.S. Marine Repair as a party because Norshipco has no board of directors and operates under the direction of the chief operating officer of U.S. Marine Repair.

Norshipco maintains that the Agreement is unambiguous and the trial court correctly interpreted its plain meaning. Furthermore, Norshipco asserts that the trial court properly dismissed U.S. Marine Repair as a party because Mrs. Eure failed to demonstrate that Norshipco was merely the "alter ego" of the corporation.

## II.  Standard of Review

This appeal presents questions of both law and fact.  The question whether the language of a contract is ambiguous is a question of law which we review de novo.  Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994).  Accordingly, on appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself. Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).

The question whether the plaintiff introduced sufficient evidence to hold a parent company liable for the debts of its

subsidiary is a question of fact.  <u>Beale v. Kappa Alpha Order</u>, 192 Va. 382, 399, 64 S.E.2d 789, 798 (1951).  Accordingly, we will only reverse the finding of the trial court if it is plainly wrong or without evidence to support it.  <u>W.S. Carnes, Inc. v. Board of Supervisors</u>, 252 Va. 377, 385, 478 S.E.2d 295, 301 (1996).

### III.  Analysis

As a preliminary matter, the dissent maintains that consideration of Mrs. Eure's argument concerning parol evidence is barred by application of Rule 5:25.  Even Norshipco does not make this argument.

In Mrs. Eure's opposition to Norshipco's motion for summary judgment she first argued that the language of the Agreement was unambiguous; however, she further asserted that if the trial court found the Agreement to be ambiguous, then she should be permitted to introduce parol evidence to clarify the intent of the parties.  The trial court considered the issue of ambiguity, twice ruled that the language of the Agreement was ambiguous, and permitted the introduction of parol evidence at trial before reversing its prior rulings and finding the language of the Agreement unambiguous.  On appeal, Mrs. Eure maintains that the language of the Agreement is ambiguous and that the unrefuted parol evidence introduced at trial supports her interpretation of the Agreement.

The purpose of Rule 5:25 is "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials." Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988), cert. denied, 490 U.S. 1028 (1989). None of the aforementioned concerns exists in the present case. Having ruled on the issue three times, the trial court clearly had the opportunity "to rule intelligently" on the issue. This case hardly presents an appeal on undisclosed grounds. Rule 5:25 does not bar Mrs. Eure from asserting before this Court that the language in the Agreement is ambiguous and that the trial court should have considered the parol evidence presented below.

When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself. Ross v. Craw, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986). However, when a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties. Aetna Cas. and Sur. Co. v. Fireguard Corp., 249 Va. 209, 215, 455 S.E.2d 229, 232 (1995). Contract language is ambiguous when "it may be understood in more than one way or when it refers to two or more things at the same time." Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992). However,

9

"[a] contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).

On appeal, Mrs. Eure maintains that the Agreement "means that for the remainder of her lifetime, she would receive, at Norshipco's expense, the benefits existing at the time of the execution of the contract, as well as any additional benefits Norshipco might subsequently add to its coverage." Norshipco argues that "the replacement plan contemplated by the Agreement was one which Mr. Eure would be entitled to if he were living and holding office as the President of Norshipco at the time of the contemplated replacement of the plan."

In order to determine whether the language is ambiguous, we look at the words at issue within the four corners of the Agreement itself. Wilson, 227 Va. at 188, 313 S.E.2d at 398. Upon independent review of the Agreement, we hold that the Agreement is ambiguous on its face.

The language used in the health care provision can be interpreted in more than one way. The Agreement provides health care coverage to Mrs. Eure under the existing plan, "or any replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco." By its

terms, the clause could either mean that any replacement plan coverage must be equal to the coverage being provided when the Agreement was signed, or that any replacement plan coverage must be equal to that which Mr. Eure would receive as President of Norshipco at the time any replacement plan is instituted. Accordingly, the clause providing health care benefits is ambiguous and the trial court erred in failing to consider parol evidence.

We note that, in the same paragraph, a further ambiguity appears. Norshipco assumes the responsibility for providing "reasonable security for the ongoing performance of its obligations hereunder after the liquidation or dissolution of Norshipco or any change of control." The word "hereunder" modifies "obligations," but the phrase does not explain to which obligations it refers. The clause can be interpreted to provide security for the health care benefits obligation which appears in the same paragraph, or it can be interpreted to provide security for the deferred compensation payments which are included in paragraph 1 of the Agreement, or it can be interpreted to provide security for both health care benefits and deferred compensation benefits. If the obligation to provide security for ongoing performance of obligations is concerning health care benefits, there is an obvious conflict in the juxtaposition of language that posits Mr. Eure as President

of Norshipco under circumstances where it is contemplated that Norshipco is liquidated or dissolved. These different interpretations and inherent conflicts demonstrate ambiguity in the Agreement.

Having determined that the language in the Agreement is ambiguous, we will next consider the parol evidence presented at trial. In response to the question whether Mrs. Eure's benefits could be retracted by Norshipco, Carlyle testified that "it was the intent that Mrs. Eure was to have these benefits for the rest of her life." Furthermore, two letters written prior to the execution of the Agreement indicated that Mrs. Eure was to receive coverage equal to "the kind . . . in force," at the time the Agreement was signed. The only evidence that supported Norshipco's interpretation of the Agreement was the testimony of Vinck. However, Vinck was not a party to the Agreement; therefore, her testimony consisted solely of her personal interpretation of the Agreement and did not reveal the intent of the parties at the time the Agreement was entered. Accordingly, the parol evidence in favor of Mrs. Eure's interpretation of the Agreement was unrefuted at trial.

On this record, we hold that the trial court erred in finding the language of the Agreement unambiguous and in failing to consider the parol evidence that was presented. At trial, both parties had the opportunity to introduce parol evidence.

In light of the unrefuted parol evidence in support of Mrs. Eure's interpretation of the Agreement, we hold that Norshipco breached the Agreement when it terminated the reimbursement plan benefiting Mrs. Eure.

Finally, Mrs. Eure argues that the trial court erred in dismissing U.S. Marine Repair as a party. She claims that "U.S. Marine offered no evidence to demonstrate that Norshipco was an entity independent of U.S. Marine's control." Mrs. Eure has misstated the allocation of the burden of proof on this issue.

In Beale v. Kappa Alpha Order, 192 Va. at 396-97, 64 S.E.2d at 797, we stated that:

> 'Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary . . . it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable.'

(Citation omitted). The separate corporate entities of corporations will be observed by the courts unless a corporation is shown to be the "adjunct, creature, instrumentality, device, stooge, or dummy of another corporation." Id. at 399, 64 S.E.2d at 798. Generally, courts will observe the separate corporate entity, even though one corporation "may dominate or control

13

another, or may treat it as a mere department [or] instrumentality . . . and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other." Id. (citation omitted). Accordingly, Mrs. Eure had the burden to provide facts sufficient to demonstrate that Norshipco was merely the "alter ego" of U.S. Marine Repair in order for the trial court to disregard the corporate form and hold U.S. Marine Repair liable for the obligations of Norshipco.

To support her assertion that U.S. Marine Repair controls Norshipco, Mrs. Eure relies upon the deposition testimony of Alexander Krekich, a senior officer at U.S. Marine Repair, who stated that Norshipco does not have a board of directors. Mrs. Eure also points to an application for a letter of credit for her benefit, wherein the applicant is listed as "United States Marine Repair, Inc. for acct of Norfolk Shipbuilding & Drydock Corporation." According to Mrs. Eure, if U.S. Marine Repair was not controlling Norshipco, "there would be no reason for it to be involved in obtaining the letter of credit" for Mrs. Eure.[2]

The evidence presented by Mrs. Eure was not sufficient to allow the trial court to disregard the corporate form. Mrs.

---

[2] We note that the evidence presented at trial demonstrated that U.S. Marine Repair is "strictly the holding company" of Norshipco, its subsidiary. Furthermore, U.S. Marine Repair never assumed the obligations of Norshipco.

Eure failed to present evidence that Norshipco was the "alter ego" of U.S. Marine Repair; therefore, the trial court did not err in dismissing U.S. Marine Repair as a party when the underlying lawsuit concerned an Agreement entered into between Mrs. Eure and Norshipco.

In its Final Decree, the trial court rendered judgment in favor of U.S. Marine Repair, which judgment will be affirmed. The trial court declared that the Agreement does not require Norshipco to continue to provide benefits to Mrs. Eure under its former Officers' Medical Expense Reimbursement Plan, which declaration shall be reversed and judgment will be entered in favor of Mrs. Eure. The remaining provisions of the Final Decree are not before us on appeal and will remain unaffected by our decision.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment</u>.

JUSTICE LACY, with whom JUSTICE KEENAN and JUSTICE KINSER join, dissenting.

I respectfully dissent from the majority's opinion in this case on procedural and substantive grounds. The primary issue raised by Mrs. Eure in this appeal is whether the contract provision at issue was ambiguous. At trial Mrs. Eure did not assert that the provision was ambiguous, but asserted the

15

opposite – that the provision was unambiguous.  Under well-established rules, Mrs. Eure is not entitled to consideration of this issue by this Court.  I also conclude that the provision at issue, on its face and when read in context, is not ambiguous and that the trial court correctly interpreted and applied the plain meaning of the provision.  For these reasons, I would affirm the judgment of the trial court.

In her first assignment of error, Mrs. Eure asserts that the trial court erred by finding that the Agreement was unambiguous and that it should have considered parol evidence when determining whether, under the Agreement, Mrs. Eure was entitled to continue receiving benefits under the former Officers' Medical Expense Reimbursement Plan.  While the parties clearly disagreed on the interpretation of the Agreement at the trial court level, Norshipco correctly asserts that at all times Mrs. Eure contended that the Agreement was unambiguous and at no point did Mrs. Eure assert before the trial court that the Agreement was ambiguous.

Mrs. Eure's motion for declaratory judgment states that, "[t]he language bargained for and contained in [the clause at issue] makes it clear beyond reasonable dispute that no diminution of coverage would occur."  In her opposition to Norshipco's motion for summary judgment, Mrs. Eure asserted that the language of the Agreement clearly supports her position, but

that "[t]o the extent this Court rules that the language in the Agreement is less than clear, Plaintiff is entitled to present evidence which clarifies the intent of the parties." This is not an assertion that the provision is ambiguous, but only that, if the trial court concluded it was ambiguous, the parol evidence rule should be utilized to allow evidence of intent. At trial, Mrs. Eure continued to argue that "there is only one permissible interpretation of the language here."

In its opinion letter, the trial court stated that the issue was controlled by the last clause of the first sentence in paragraph two and noted that "[e]ach of you claims the clause is unambiguous." Finally, even after the trial court rendered its decision that the Agreement was unambiguous, Mrs. Eure did not challenge the trial court's characterization of her position as claiming the clause was unambiguous, but argued in her motion to reconsider that the trial court failed "to recognize that [the language at issue] clearly recognizes Mrs. Eure's right." At no time prior to the submission of her assignments of error in this Court, did Mrs. Eure argue that the relevant clause was ambiguous.

The long-standing rule in Virginia is that parties may not take successive positions in the course of litigation that are inconsistent with each other or mutually contradictory. Smith v. Settle, 254 Va. 348, 354, 492 S.E.2d 427, 431 (1997). " 'A

17

[litigant] shall not be allowed to approbate and reprobate at the same time.' " Leech v. Beasley, 203 Va. 955, 962, 128 S.E.2d 293, 298 (1962). It is also a fundamental rule of this Court that we will only consider questions which were presented to the trial court "with reasonable certainty" at the time of the trial court's ruling. Rule 5:25.

Mrs. Eure's position at trial regarding ambiguity of the provision at issue and the position she advances here are not only inconsistent with each other, they are mutually contradictory. Such approbation and reprobation, along with her failure to argue at any time before the trial court that the provision was ambiguous, should be fatal to her ability to argue before this Court that the relevant clause was ambiguous under the well-established principles recited above.

I also disagree with the majority's determination that the language at issue is ambiguous. In 1992, following the death of Mr. Eure, Norshipco, Norshipco Financial Corporation, and Mrs. Eure executed an agreement in settlement of a more than $3 million debt owed by Mr. Eure to Norshipco. The settlement agreement included provisions relating to retirement benefits, stock assignments, transfers and reissues, and, as relevant here, health insurance benefits. The provision at issue states:

> Mrs. Eure will be afforded health care at
> Norshipco's expense throughout her remaining
> lifetime, under the existing Norshipco health

> plan and any future enhancements available to key executives, <u>or any replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco.</u>

(emphasis added). The majority concludes, as Mrs. Eure argues here, that the emphasized clause is ambiguous because it "could either mean" that a new plan had to be "equal to the coverage being provided when the Agreement was signed" or that it had to be "equal to that which Mr. Eure would receive as President of Norshipco at the time" a new plan was instituted. However, neither Mrs. Eure nor the majority offers any analysis of the clause itself that supports the construction advocated by Mrs. Eure and adopted by the majority.

In her brief, Mrs. Eure contends that the "sense" of the disputed clause was that if Norshipco "reduced its coverage, she would be entitled to receive benefits substantially equivalent to those existing at the time of the execution of the contract." Further, the disputed clause "[s]pecifically" means that if the reimbursement plan which was in existence at the time of the execution of the settlement agreement was terminated, Norshipco was required to "provide her with equivalent replacement coverage."

This "sense" of the clause, however, is never explained in terms of the language contained in the clause. Rather, Mrs.

19

Eure argues that the fallacy of Norshipco's position is not that Norshipco's interpretation is erroneous, but that "the words on which they rely refer only to a replacement plan, *and there was none.*" This argument addresses a factual issue, that is, whether the substitution of a new health care plan which eliminated the reimbursement option was or was not a replacement plan. It does not address the issue of ambiguity, and the factual issue it raises was resolved by the trial court when that court determined that the word "plan" as used in this provision was used "collectively, that is, to mean all of the health benefits Norshipco provides Mrs. Eure." Mrs. Eure has not challenged this finding on appeal.

Analysis of the provision as written does not support the construction advanced by Mrs. Eure in a number of particulars. Mrs. Eure's construction is based on the theory that the reference to Mr. Eure being president of Norshipco refers back to 1992. However, if such reference back is to successfully support the construction advanced by Mrs. Eure, the clause would have to be amended to read "or any replacement plan which provides to her coverage substantially equivalent to that which would <u>have been</u> available if Mr. Eure were living and holding office as President of Norshipco <u>in 1992</u>." Ambiguity cannot be established based on the addition of language not contained in the writing. See <u>Kennard v. Travelers Protective Ass'n</u>, 157 Va.

153, 157, 160 S.E. 38, 39 (1931) ("[c]ourts should not make uncertain that which is certain, and they cannot make contracts for the parties").

Furthermore, the first clause of the provision insures that Mrs. Eure will receive medical care under the plan in effect at the time of settlement plus any enhancements. If the second clause means no more than that future benefits must be the same as those provided in 1992, the second clause would be surplusage because that requirement was already established in the first clause.

The construction of the provision clearly reflects the intent of the parties. The first clause establishes Mrs. Eure's entitlement to lifetime health care benefits at Norshipco's expense and measures the level of benefits she is to receive by those available to a spouse of an officer of Norshipco under the company's health care plan in existence in 1992 when the Agreement was signed. The second clause establishes the level of benefits which Mrs. Eure would be entitled to receive in the event the company changed its health care plan by using the same measure as in the first clause, that is, the health care benefits that a spouse of an officer of Norshipco would receive under the subsequent company plan.[*]

_____

[*] Mrs. Eure argues that such a construction would allow the company to defeat her claim to medical coverage entirely by

21

Finally, the majority concludes that ambiguity exists because other portions of the provision contemplate the potential dissolution of Norshipco in which case there would no longer be a "president" of Norshipco. I submit that the provision in issue is not rendered ambiguous by virtue of other parts of paragraph two. The provision in issue addresses the level of medical care benefits to which Mrs. Eure is entitled under the agreement. The portions of the paragraph cited by the majority address the requirement that Norshipco provide for continuation of its performance responsibilities in the event its corporate existence is terminated or altered. Those provisions do not address the level of services it must provide.

For these reasons, I would affirm the judgment of the trial court.

---

terminating medical coverage to the spouse of the company president. That factual circumstance is not before the Court and is not relevant to determining whether language in a contract is ambiguous.