JUSTICE LACY,
with whom JUSTICE KEENAN and JUSTICE KINSER join, dissenting.
I respectfully dissent from the majority’s opinion in this case on procedural and substantive grounds. The primary issue raised by Mrs. Eure in this appeal is whether the contract provision at issue was ambiguous. At trial Mrs. Eure did not assert that the provision was ambiguous, but asserted the opposite - that the provision was unambiguous. Under well-established rules, Mrs. Eure is not entitled to consideration of this issue by this Court. I also conclude that the provision at issue, on its face and when read in context, is not ambiguous and that the trial court correctly interpreted and applied the plain meaning of the provision. For these reasons, I would affirm the judgment of the trial court.
*636 In her first assignment of error, Mrs. Eure asserts that the trial court erred by finding that the Agreement was unambiguous and that it should have considered parol evidence when determining whether, under the Agreement, Mrs. Eure was entitled to continue receiving benefits under the former Officers’ Medical Expense Reimbursement Plan. While the parties clearly disagreed on the interpretation of the Agreement at the trial court level, Norshipco correctly asserts that at all times Mrs. Eure contended that the Agreement was unambiguous and at no point did Mrs. Eure assert before the trial court that the Agreement was ambiguous.
Mrs. Eure’s motion for declaratory judgment states that, “[t]he language bargained for and contained in [the clause at issue] makes it clear beyond reasonable dispute that no diminution of coverage would occur.” In her opposition to Norshipco’s motion for summary judgment, Mrs. Eure asserted that the language of the Agreement clearly supports her position, but that “[t]o the extent this Court rules that the language in the Agreement is less than clear, Plaintiff is entitled to present evidence which clarifies the intent of the parties.” This is not an assertion that the provision is ambiguous, but only that, if the trial court concluded it was ambiguous, the parol evidence rule should be utilized to allow evidence of intent. At trial, Mrs. Eure continued to argue that “there is only one permissible interpretation of the language here.”
In its opinion letter, the trial court stated that the issue was controlled by die last clause of the first sentence in paragraph two and noted that “[e]ach of you claims the clause is unambiguous.” Finally, even after the trial court rendered its decision that the Agreement was unambiguous, Mrs. Eure did not challenge the trial court’s characterization of her position as claiming the clause was unambiguous, but argued in her motion to reconsider that the trial court failed “to recognize that [the language at issue] clearly recognizes Mrs. Eure’s right.” At no time prior to the submission of her assignments of error in this Court, did Mrs. Eure argue that the relevant clause was ambiguous.
The long-standing rule in Virginia is that parties may not take successive positions in the course of litigation that are inconsistent with each other or mutually contradictory. Smith v. Settle, 254 Va. 348, 354, 492 S.E.2d 427, 431 (1997). “ ‘A [litigant] shall not be allowed to approbate and reprobate at the same time.’ ” Leech v. Beasley, 203 Va. 955, 962, 128 S.E.2d 293, 298 (1962). It is also a fundamental rule of this Court that we will only consider questions *637 which were presented to the trial court “with reasonable certainty” at the time of the trial court’s ruling. Rule 5:25.
Mrs. Eure’s position at trial regarding ambiguity of the provision at issue and the position she advances here are not only inconsistent with each other, they are mutually contradictory. Such approbation and reprobation, along with her failure to argue at any time before the trial court that the provision was ambiguous, should be fatal to her ability to argue before this Court that the relevant clause was ambiguous under the well-established principles recited above.
I also disagree with the majority’s determination that the language at issue is ambiguous. In 1992, following the death of Mr. Eure, Norshipco, Norshipco Financial Corporation, and Mrs. Eure executed an agreement in settlement of a more than $3 million debt owed by Mr. Eure to Norshipco. The settlement agreement included provisions relating to retirement benefits, stock assignments, transfers and reissues, and, as relevant here, health insurance benefits. The provision at issue states:
Mrs. Eure will be afforded health care at Norshipco’s expense throughout her remaining lifetime, under the existing Norshipco health plan and any future enhancements available to key executives, or any replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco.
(emphasis added). The majority concludes, as Mrs. Eure argues here, that the emphasized clause is ambiguous because it “could either mean” that a new plan had to be “equal to the coverage being provided when the Agreement was signed” or that it had to be “equal to that which Mr. Eure would receive as President of Norshipco at the time” a new plan was instituted. However, neither Mrs. Eure nor the majority offers any analysis of the clause itself that supports the construction advocated by Mrs. Eure and adopted by the majority.
In her brief, Mrs. Eure contends that the “sense” of the disputed clause was that if Norshipco “reduced its coverage, she would be entitled to receive benefits substantially equivalent to those existing at the time of the execution of the contract.” Further, the disputed clause “ [specifically” means that if the reimbursement plan which was in existence at the time of the execution of the settlement agree *638 ment was terminated, Norshipco was required to “provide her with equivalent replacement coverage.”
This “sense” of the clause, however, is never explained in terms of the language contained in the clause. Rather, Mrs. Eure argues that the fallacy of Norshipco’s position is not that Norshipco’s interpretation is erroneous, but that “the words on which they rely refer only to a replacement plan, and there was none.” This argument addresses a factual issue, that is, whether the substitution of a new health care plan which eliminated the reimbursement option was or was not a replacement plan. It does not address the issue of ambiguity, and the factual issue it raises was resolved by the trial court when that court determined that the word “plan” as used in this provision was used “collectively, that is, to mean all of the health benefits Norshipco provides Mrs. Eure.” Mrs. Eure has not challenged this finding on appeal.
Analysis of the provision as written does not support the construction advanced by Mrs. Eure in a number of particulars. Mrs. Eure’s construction is based on the theory that the reference to Mr. Eure being president of Norshipco refers back to 1992. However, if such reference back is to successfully support the construction advanced by Mrs. Eure, the clause would have to be amended to read “or any replacement plan which provides to her coverage substantially equivalent to that which would have been available if Mr. Eure were living and holding office as President of Norshipco in 1992.” Ambiguity cannot be established based on the addition of language not contained in the writing. See Kennard v. Travelers Protective Ass’n, 157 Va. 153, 157, 160 S.E. 38, 39 (1931) (“[cjourts should not make uncertain that which is certain, and they cannot make contracts for the parties”).
Furthermore, the first clause of the provision insures that Mrs. Eure will receive medical care under the plan in effect at the time of settlement plus any enhancements. If the second clause means no more than that future benefits must be the same as those provided in 1992, the second clause would be surplusage because that requirement was already established in the first clause.
The construction of the provision clearly reflects the intent of the parties. The first clause establishes Mrs. Eure’s entitlement to lifetime health care benefits at Norshipco’s expense and measures the level of benefits she is to receive by those available to a spouse of an officer of Norshipco under the company’s health care plan in existence in 1992 when the Agreement was signed. The second clause *639 establishes the level of benefits which Mrs. Eure would be entitled to receive in the event the company changed its health care plan by using the same measure as in the first clause, that is, the health care benefits that a spouse of an officer of Norshipco would receive under the subsequent company plan.*
Finally, the majority concludes that ambiguity exists because other portions of the provision contemplate the potential dissolution of Norshipco in which case there would no longer be a “president” of Norshipco. I submit that the provision in issue is not rendered ambiguous by virtue of other parts of paragraph two. The provision in issue addresses the level of medical care benefits to which Mrs. Eure is entitled under the agreement. The portions of the paragraph cited by the majority address the requirement that Norshipco provide for continuation of its performance responsibilities in the event its corporate existence is terminated or altered. Those provisions do not address the level of services it must provide.
For these reasons, I would affirm the judgment of the trial court.

 Mrs. Eure argues that such a construction would allow the company to defeat her claim to medical coverage entirely by terminating medical coverage to the spouse of the company president. That factual circumstance is not before the Court and is not relevant to determining whether language in a contract is ambiguous.