MANSFIELD, Justice (dissenting).
I respectfully dissent. The court's decision violates the law of the case, disregards the recent nunc pro tunc order, and leaves the plaintiffs with an undeserved take-nothing judgment. I would reach the merits and affirm the district court's enforcement of the high-low settlement agreement.
I. A Quick Recap of the Facts.
The basic facts are these. The case was submitted to the jury on July 18, 2017. While the jury was out, on the morning of July 19, the parties entered into a high-low agreement with $ 100,000 as the low and $ 1 million as the high.
*689 Later on the 19th, the jury returned a defense verdict. The district court entered a take-nothing judgment on the jury verdict on July 25.
At this point, the posttrial wheels began to turn. On August 2, the plaintiffs moved for a new trial and for change of venue. On August 10, the defendant DAC, Inc. filed a resistance to the plaintiffs' posttrial motions and a motion to enforce the high-low settlement. On August 16, the plaintiffs resisted DAC's motion to enforce the settlement.
A hearing on these motions took place on October 13. The district court stated that the high-low agreement controlled and that it was not going to rule on the plaintiffs' posttrial motions because it considered them moot. The court also put on the record that when it had notified plaintiffs' counsel of the defense verdict, counsel had responded, "Thank God we entered into a high-low settlement agreement."
No written order was entered following the October 13 hearing. However, the plaintiffs filed a notice of appeal on November 7. The appeal proceeded for the next year and three months.
On February 1, 2019, after we had heard oral argument on the appeal, we entered the following order:
Upon consideration, the court concludes it lacks jurisdiction to hear the appeal because no written ruling on the parties' posttrial motions was filed. See Iowa R. App. P. 6.101(1)(b ). In accordance with rule 6.1004, this matter is remanded to the district court for the limited purpose of the entry of a written ruling, nunc pro tunc , on the parties' posttrial motions.
On February 18 and 19, the district court entered a nunc pro tunc written order granting DAC's motion to enforce settlement and determining that the plaintiffs' posttrial motions were moot.
The parties' (and my) expectation was that the court would now reach the merits and determine whether the high-low agreement had indeed mooted the posttrial motions. Instead, the court now treats everything that has happened in this case since July 25, 2017, as a nonevent. I disagree.
II. The Majority Disregards Both Law of the Case and the Nunc Pro Tunc Order.
For one thing, the law of the case applies. Correct or not, we made a ruling on February 1. In reliance on that ruling, the district court entered a nunc pro tunc order. Upon return of the case to our court, the February 1 ruling controls. See Lee v. State , 874 N.W.2d 631, 646 (Iowa 2016) ("It is a familiar legal principle that an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case.").
Furthermore, this is more than a typical law-of-the-case scenario. The situation actually described in the majority opinion-i.e., a party filing an appeal during the pendency of posttrial motions-no longer exists. The district court has entered a nunc pro tunc order, thus fixing the very absence of a written order the majority complains about. The entry of the nunc pro tunc order moots the issue raised here by the majority. In Wirtanen v. Provin , the trial court entered a nunc pro tunc order while the appeal was pending before us in January 1980. See 293 N.W.2d 252, 255 (Iowa 1980). The nunc pro tunc order by its terms related back to December 1978, prior to the filing of the notice of appeal. Id. We held that for purposes of determining jurisdiction, we should regard the nunc *690 pro tunc order as having been entered before the notice of appeal. Id. at 256.
Additionally, the majority opinion leads to an impractical and potentially unfair result. The plaintiffs should receive either $ 100,000 or an opportunity to challenge the jury verdict in this case. Yet the court's decision leaves them with neither by affirming a take-nothing judgment.
Despite the majority's decision, one hopes that DAC will honor its view of the high-low settlement agreement and pay the plaintiffs $ 100,000. But if DAC doesn't, what happens next? The plaintiffs would have to file a new lawsuit to enforce the settlement agreement and would now face various obstacles in doing so. For example, does res judicata bar a brand new lawsuit? Or suppose DAC decides to adopt the plaintiffs' view of the high-low settlement in the wake of the majority's ruling.
Moreover, even if the majority were correct that the only appeal before us is from the original take-nothing judgment, the majority would still need to address the plaintiffs' argument on pages 30-34 of their brief that the district court abused its discretion in denying a mistrial. Appellant's Br. at 30-34. This argument is not based on the high-low agreement or the posttrial motions. It is an argument that applies to the original July 25, 2017 judgment entered on the jury verdict. So under the majority's logic, it has to be considered.
For all these reasons, I would reach the merits of whether the high-low settlement agreement is binding.
III. The High-Low Agreement Is Enforceable Under These Specific Circumstances.
Turning to whether this high-low agreement precludes posttrial motions, there are several relevant precedents from other jurisdictions.
In Smith v. Settle , the Virginia Supreme Court held that a high-low agreement foreclosed the plaintiffs from challenging jury instructions posttrial. 254 Va. 348, 492 S.E.2d 427, 429 (1997). It then determined that the high-low agreement should be set aside because the plaintiffs had repudiated it by refusing the tender of the "low" figure of $ 350,000. Id. The court reasoned,
Finding nothing in counsel's statement implying that a "properly instructed" jury was part of the agreement or that either party could seek post-verdict relief in the trial court, we will not rewrite the agreement to impose provisions that are neither stated nor implied therein. The plaintiffs' unjustified refusal of the tender prevented performance of the agreement and gave Smith the right to regard it as terminated. Therefore, we conclude that the court erred in enforcing the high-low agreement.
Id. (citations omitted).
On the other hand, in Leibstein v. LaFarge North America, Inc. , the United States District Court for the Eastern District of New York said in dicta that a high-low agreement entered into during jury deliberations would not bar the plaintiffs from raising juror misconduct during voir dire. 767 F. Supp. 2d 373, 375-78 (E.D.N.Y. 2011). Notably, in that case the basis for challenging the verdict did not come to light until after the jury returned its verdict. See id. at 375.
In Matamoros v. Tovbin , the New York Appellate Division in a very brief opinion said that the trial court properly considered the merits of posttrial motions because "[t]he parties' so-called 'high-low' agreement did not expressly prohibit the making of the subject postverdict motion *691 and cross motion." 82 A.D.3d 941, 919 N.Y.S.2d 95, 95-96 (2011).
Finally, in Reynolds v. Allied Emergency Services, PC , the parties had entered into a high-low agreement prior to trial that expressly provided, "No party will retain any appeal rights." 193 So. 3d 625, 627 (Miss. 2016). The Mississippi Supreme Court held that this agreement did not foreclose the plaintiff from seeking a new trial -as opposed to an appeal-based on erroneous jury instructions. Id. at 633.
The lesson I draw from this authority is that a high-low agreement is just like any other contract, and it is therefore difficult to make blanket generalizations. Sometimes the high-low agreement has precluded posttrial motions; sometimes it hasn't. The proper approach for a reviewing court is to apply standard principles of contract interpretation to the specific agreement at hand. See, e.g. , Restatement (Second) of Contracts §§ 202, 203, 204, 206, 207, at 86-107 (Am. Law Inst. 1981). Here, several factors favor DAC's position that the high-low precludes the plaintiffs' posttrial motions.
First, the agreement was entered into during jury deliberations. At that time all the grounds for the subsequently filed posttrial motions were already known. This is not a case where the agreement was entered into first and then the grounds for the posttrial motions appeared later. In this circumstance, it would have been reasonable for the plaintiffs' counsel to spell out an exception to the high-low that he already knew about.
Second, the agreement-such as it was-was drafted by the plaintiffs' counsel, not DAC's counsel.
Third, as the district court noted, when told of the jury's verdict, the plaintiffs' counsel said, "Thank God we entered into a high-low settlement agreement."
Accordingly, I agree with the district court's interpretation of this high-low agreement and would affirm the district court's nunc pro tunc order.
Cady, C.J., and Waterman, J., join this dissent.