**Arthur Ray BOWLING, et al., Plaintiffs,**

**Jeffrey A. Crane; Gene Randall; Gerard Benedik, Intervenors–Appellants,**

**Waite, Schneider, Bayless & Chesley Company, L.P.A.; John T. Johnson; James T. Capretz, Appellees,**

v.

**PFIZER, INC.; Shiley, Inc., Defendants.**

No. 97–3369.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1997.

Decided Jan. 5, 1998.

---

Brian Wolfman (argued and briefed), Alan B. Morrison (briefed), Public Citizen Litigation Group, Washington, DC, for Intervenors–Appellants.

Stanley M. Chesley (argued and briefed), Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Appellee Waite, Schneider, Bayless & Chesley Company, L.P.A.

John T. Johnson, Johnson & Dylewski, Houston, TX, for Appellee John T. Johnson.

James T. Capretz, Capretz & Radcliffe, Newport Beach, CA, for appellee James T. Capretz.

Before: MARTIN, Chief Judge, and KRUPANSKY and DAUGHTREY, Circuit Judges.

## OPINION

BOYCE F. MARTIN, Jr., Chief Judge.

This matter is making a repeat visit to the Sixth Circuit and has been the subject of numerous district court opinions. The remarkable aspect of this outpouring of judicial resources is that much of it occurred after the case settled. The bulk of the federal court oversight in this case has concerned attorneys' fees, and we now write again on this subject.

This litigation concerns attorneys' fees relating to a settlement reached in a class action suit filed by recipients of allegedly defective heart valve implants. At issue is the first of ten annual payments to the class and special counsel for their work implementing the settlement. Counsel applied for $712,987.75. The district court awarded them $625,000 and set future payments at $625,000 annually. Several class members appealed, arguing that the award was too high and that the district court did not have the latitude to set fees prospectively. We find that the district court erred in awarding

counsel $625,000, both for the fee application at issue and for future years, and we reverse and remand to the district court.

## I.

This class action involved living valve implant recipients (approximately 50,000 in the spring of 1996) and their spouses, who sued Pfizer, Inc., the parent company of implant manufacturer Shiley, Inc. The parties reached a tentative settlement in early 1992 before any significant motions were decided. On August 19, Judge Spiegel of the Southern District of Ohio approved the settlement on a world-wide class basis. *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D.Ohio 1992). The Sixth Circuit dismissed the final appeal regarding the settlement on March 15, 1994, and the Supreme Court denied certiorari on October 3. *Ridgeway v. Pfizer, Inc.*, 513 U.S. 916, 115 S.Ct. 294, 130 L.Ed.2d 208 (1994). "Final Approval of the Settlement" occurred at that time.

The settlement called for Pfizer to pay into three main funds: the Patient Benefit Fund ($75 million), the Medical and Psychological Consultation Fund ($80 to $130 million, depending on the number of claims), and the Fracture Compensation Mechanism ($500,000 to $2 million for each U.S. claimant). Pfizer also made a $10 million payment to the Spousal Compensation Fund. Pfizer made initial payments of $80 million to the Medical and Psychological Consultation Fund and $10 million to the Spousal Compensation Fund. Pfizer initially contributed only $12.5 million to the $75 million Patient Benefit Fund with the remainder to be paid in $6.25 million annual installments from 1996 to 2005.

The settlement involved a number of different attorneys and firms. The class counsel is Waite, Schneider, Bayless & Chesley Co., led by Stanley Chesley. Although the Chesley firm does some legal work for the class, the bulk of its effort appears to be directed toward implementation and administration of the settlement. Special counsel John Johnson concentrates on studying which valves are likely to fracture, and special counsel James Capretz has an emphasis on valve replacement guidelines. The Public Citizen Litigation Group has placed itself in a watchdog role on behalf of the plaintiff class. Although the court has awarded attorneys' fees and expenses to Public Citizen—$105,037.46 from the initial settlement and $51,129.86 for the period at issue—Public Citizen's role in this appeal of attorneys' fees has been to contest class and special counsel's fee requests. Public Citizen fought class and special counsel's original fee request and now argues that the class and special counsel's recent award of additional fees should be reduced. Public Citizen represents class member-intervenors Jeffrey A. Crane, Gene Randall, and Gerard Benedik (Crane).

Class and special counsel made an initial request for a lump sum payment of $33 million, 20 percent of what they claimed was a settlement worth at least $165 million. On March 1, 1996, Judge Nangle, sitting by designation in the Southern District of Ohio, found that $102.5 million had been paid into the common fund and awarded class and special counsel $10.25 million (ten percent of the common fund) as well as expenses of $476,938.06. *Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261 (S.D.Ohio 1996).

Judge Nangle made provisions for future attorneys' fees from the ten annual $6.25 million payments Pfizer was scheduled to make to the Patient Benefit Fund. Recognizing that there would be continuing administrative responsibilities for counsel, Judge Nangle awarded counsel yearly expenses and fees of up to ten percent of the $6.25 million annual payment. Counsel were instructed to apply for their annual fees within thirty days of Pfizer's deposit into the Patient Benefit Fund. The Special Masters/Trustees (trustees) would then make a report and recommendation to the district court judge, and the judge could deny or grant, in whole or in part, counsel's application. Finally, Judge Nangle noted that future fee applications would be handled by Judge Spiegel. On May 24, Judge Nangle issued an order on a motion for reconsideration of attorneys' fees in which he adjusted expenses but otherwise upheld the award. *Bowling v. Pfizer, Inc.*, 927 F.Supp. 1036 (S.D.Ohio 1996). The Sixth Circuit affirmed Judge Nangle's initial fee award and subsequent funding scheme.

*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir.1996).

The dispute now before us concerns class and special counsel's fee application for services rendered from August 1995 to October 1996. Pfizer made a $6.25 million payment on October 3, 1996, and class and special counsel requested fees of $722,987.75. The trustees recommended an award of $625,000 and full reimbursement of $69,255.48 in expenses. On March 17, 1997, Judge Spiegel issued an order regarding counsel's annual fee request in which he adopted the trustees' recommendations and awarded the fees and expenses. Judge Spiegel went on, however, to award class and special counsel $625,000 for each of the remaining years of $6.25 million payouts. Judge Spiegel wrote:

> The Court finds that awarding Class and Special Counsel each year 10% of the annual payment, regardless of the lodestar, fairly and efficiently resolves the attorneys' fees issue for the present and future fee applications. Even though Counsel's current lodestar exceeds the 10% cap for this year, undoubtedly there will be future applications for which the lodestar will be less than the 10%; in other words, the fee award will balance out over the remaining years defendants contribute to the Patient Benefit Fund. Furthermore, this approach eliminates the annual controversial dispute over attorneys' fees.

*Bowling v. Pfizer, Inc.,* No. C–1–91–256, order at 5 (S.D.Ohio March 17, 1997). Crane appealed the decision.

## II.

 Typically, a circuit court reviews a district court's award or denial of attorneys' fees for abuse of discretion, *Cramblit v. Fikse,* 33 F.3d 633, 634 (6th Cir.1994), but this case differs because it is governed by the law of the case. Judge Spiegel was not awarding attorneys' fees in a vacuum but rather according to the blueprint established by Judge Nangle in *Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261 (S.D.Ohio 1996), and affirmed by the Sixth Circuit. *Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir.1996). "Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case." *Consolidation Coal Co. v. McMahon,* 77 F.3d 898, 905 (6th Cir.1996) (internal quotation marks omitted). Judge Spiegel therefore was obligated to follow Judge Nangle's previous opinion. We recognize that the law of the case doctrine is discretionary when applied to a coordinate court or the same court's own decisions, *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990), but Judge Spiegel cannot depart from the decision of a district court that this Court has affirmed. *Brunet v. City of Columbus,* 58 F.3d 251, 254–55 (6th Cir.1995).

We realize that the previous district court decisions did not fully limn the criteria for the payment of future fees. "The doctrine of law of the case comes into play only with respect to issues previously determined. . . . While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Quern v. Jordan,* 440 U.S. 332, 347–48 n. 18, 99 S.Ct. 1139, 1148–49 n. 18, 59 L.Ed.2d 358 (1979) (internal quotation marks omitted). Judge Spiegel therefore is bound by the law of the case on some issues, but where the previous cases were silent we will measure his fee decision by an abuse of discretion standard.

We therefore must determine what the law of the case is. Briefly put, Judge Nangle provided for annual applications, to be vetted by the trustees, for up to $625,000 per year in fees, with additional monies for expenses. *Bowling,* 922 F.Supp. at 1284. The ten percent cap could be exceeded "in the highly unlikely event that Counsel's legal services for a particular period justify such action. . . ." *Bowling,* 927 F.Supp. at 1044. The overarching principle was that payments would be made for benefits "actually conferred upon the Class." *Bowling,* 922 F.Supp. at 1284. Judge Nangle did not choose between a lodestar or percentage of the fund approach, and he did not mention a multiplier in the case of a lodestar. Judge Nangle also provided for counsel to receive expenses, but gave no criteria for the awarding of expenses. *Id.* Regarding future fees, Judge Nangle did not provide for a set annual fee. *Id.* The Sixth Circuit did not further

elucidate Judge Nangle's fee framework but simply affirmed his decision and described his order as "well reasoned." *Bowling*, 102 F.3d at 780. As the following analysis will show, Judge Spiegel did not follow the law of the case either in regard to the initial annual fee application or in reference to future years.

### A.

Crane argues that Judge Spiegel miscalculated the initial annual fee installment. Class and special counsel requested $722,987.75, and Judge Spiegel awarded $625,000. Judge Spiegel based his decision on the trustees' recommendation. The trustees, in turn, calculated the fees on a percentage of the fund basis, noting: "The Trustees believe that the Court's intention was that counsel fees paid upon receipt to the annual payments to the Patient Benefit Fund would also be on the percentage basis (that is, 10% of the annual payment)." The trustees, however, misapprehended Judge Nangle's edict.

Judge Nangle's earlier fee decision anticipated a more individualized inspection of future fees. The initial $10.25 million award was calculated on a percentage of the fund basis, but the yearly payments, though not specifically termed "lodestar," follow a lodestar approach. According to Judge Nangle, "the future portion of Counsel's award will fairly compensate Counsel for the future work that they will do and the benefits that they will confer upon the Class at or near the time that this work is actually done and these benefits are actually conferred upon the class." *Bowling*, 922 F.Supp. at 1284. In discussing work "actually done" and benefits "actually conferred," Judge Nangle is speaking in lodestar terms.

We therefore reverse Judge Spiegel's decision regarding the 1995–96 payment and remand for reconsideration in light of hours billed for the benefit of the class. A flat rate award is not sufficient in light of Judge Nangle's guidelines. Although Judge Spiegel need not discuss the billing records in excruciating detail, he does need to establish some reasonable relationship between hours worked for the class and fees paid by the class. "It remains important ... for the

district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

In reference to the first year of billing, Crane agrees with class and special counsel on $540,000 in fees. Crane disputes between $150,000 and $175,000 in billings. Judge Spiegel can start from that benchmark and limit his inspection to the disputed fees. In his original fee decision, *Bowling*, 922 F.Supp. at 1280, Judge Nangle assessed the fee request in light of the factors set out in *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516–17 (6th Cir.1993). Those factors are largely inapposite here. Crane generally does not dispute the hourly billing rates of the various attorneys but rather contends that counsel's services were not provided for the benefit of the class. Therefore, Judge Spiegel must look at the disputed billings to determine whether they are inadequately descriptive, whether the work is duplicative or clerical, or whether the records are susceptible to any of the other shortcomings Crane has enumerated. Class and special counsel also cannot be recompensed for work done to enhance their fees. It goes without saying that Judge Spiegel should apply the same scrutiny to Public Citizen's billings. We suggest that the district court enlist the services of an auditor if necessary to assist it with the inspection of the records.

■ On remand, the court should not use a multiplier in its lodestar calculations. A multiplier "account[s] for additional factors such as the contingent nature of the case and the quality of an attorney's work." *Bowling*, 922 F.Supp. at 1278. Class and special counsel are adequately compensated for the quality of their work in this case by their billing rates, which range as high as $325 per hour. Regarding contingency, this case has settled so there is no risk. *See Bowling*, 922 F.Supp. at 1282. Class and special counsel do not merit the benefit of a multiplier.

Fees aside, it does not appear that Judge Spiegel or the trustees made any particularized inspection of class and special counsel's expense request. A simple rubber stamp is

insufficient. For instance, the Chesley firm billed $3,943.50 for in-house photocopying expenses, but there is no indication in the record of what the Chesley firm charged per photocopy. We will not delve into the minutiae of setting reasonable photocopying rates, but we would suggest that Judge Spiegel or the trustees do so. Allowing a several thousand dollar payment for photocopying expenses without looking into the cost per photocopy is exemplary of an impermissible laxity. On remand, the district court should cast a strict eye toward counsel's expense submissions.

## B.

Crane argues that Judge Spiegel erred in awarding class and special counsel $625,000 a year in fees until 2005. Judge Spiegel was charged with carrying out the mandate of Judge Nangle's earlier decision on fees. In setting annual payments at a standard rate, Judge Spiegel exceeded his authority. In his earlier decision, Judge Nangle had noted that class and special counsel could apply for "up to 10%" of the $6.25 million payments, thereby implying that he foresaw annual awards of lesser sums. *Id.* at 1284. He also later noted the possibility of "rais[ing] the 10% cap." *Bowling,* 927 F.Supp. at 1044. Judge Nangle did not, however, provide for a set annual fee. He could have done so but noted that "it is simply not appropriate for this Court to pay Counsel for services which they may or may not render in the future." *Id.* at 1043. Judge Spiegel has failed to follow the law of the case in attempting to set future fees. Therefore, regardless of how much time or money it might save simply to set a flat rate for future years, Judge Spiegel does not have that freedom.

Judge Spiegel's $625,000 annual award is so indefensible that even class and special counsel, those who would benefit from Judge Spiegel's largesse, do not argue in favor of that aspect of his decision. They do not claim that Judge Spiegel awarded $625,000 a year in future fees or even that he had the authority to do so. Instead, the class and special counsel argue that Judge Spiegel did not make a final decision on future fees and therefore did not contradict Judge Nangle's

prior opinion. Class and special counsel point to Judge Spiegel's statement that the awards are "subject to further Order of the Court and assuming Counsel perform the duties required of them." Order at 6. Any fee payment in this case, however, is "subject to further Order" because the trustees can only make recommendations. In addition, Judge Spiegel has awarded counsel $625,000 a year if they merely "perform the duties required of them." By the year 2005 the "duties required" of class and special counsel could be incredibly minimal, yet if they perform those duties they will be entitled to $625,000 for that year. Judge Spiegel's decision regarding future fees is, for all intents and purposes, final because subsequent conditions are minimal. Judge Spiegel has gone against the law of the case and his decision on this issue is reversed.

## III.

This dispute is not about whether class and special counsel have served the class well. Crane merely contends that counsel have overcharged for their services or charged for services of no benefit to the class. The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants. Indeed, Pfizer has no interest in this case and neither filed a brief nor appeared before this Court. The district court and trustees misunderstood their mandate and inadequately scrutinized counsel's claim. The district court's decisions awarding counsel fees for the initial annual payment and setting a standard rate for future payments are REVERSED and REMANDED. This case is remanded for reconsideration of fees under a lodestar method that ties fees paid to hours worked for the benefit of the class. On remand, the district court should reconsider the fee application in light of the guidelines set forth above, and the court should do so in future years as well.