# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01005-SCT

*PATRINA P. REYNOLDS*

*v.*

*ALLIED EMERGENCY SERVICES, PC AND DR.*
*PAUL BRACEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2014 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | JOHN D. GIDDENS |
| | BASKIN L. JONES |
| | DARRYL M. GIBBS |
| | ROGEN K. CHHABRA |
| | ASHLEY L. HENDRICKS |
| | WHITMAN B. JOHNSON, III |
| | LORRAINE W. BOYKIN |
| | KATRINA S. BROWN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROGEN K. CHHABRA |
| | DARRYL M. GIBBS |
| | ASHLEY L. HENDRICKS |
| | DAVID NEIL McCARTY |
| | JOHN D. GIDDENS |
| | BASKIN L. JONES |
| ATTORNEYS FOR APPELLEES: | WHITMAN B. JOHNSON, III |
| | LORRAINE W. BOYKIN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 06/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    After hearing all the evidence in a medical-malpractice trial, the jury retired to deliberate. At some point during their deliberations, they requested a copy of the jury instructions, which the bailiff provided. But instead of providing the approved set of instructions, the bailiff mistakenly provided a set that the defendants previously had proffered, which included a peremptory instruction. The jury returned a unanimous defense verdict, and the parties left the courthouse. When the trial judge discovered the jury-instruction mistake later that afternoon, he called the parties back to the courthouse and later ordered a new trial.

¶2.    But the defendants then filed a motion to enforce the high/low settlement agreement that the parties had entered into prior to trial. The trial judge agreed with the defendants that a new trial was not allowed under the agreement and rescinded his previous order granting it. Plaintiff Patrina Reynolds now appeals to this Court. We reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶3.    In March 2007, Reynolds presented to an MEA clinic with several symptoms, including lower abdominal pain, cramping and nausea. MEA advised her to go to the emergency room at St. Dominic's. Dr. Paul Bracey evaluated Reynolds, and she was discharged later that evening. A few days later, Reynolds again presented to the St. Dominic's ER, this time with complaints of dizziness, sinus pressure and swelling to the left side of her face. Reynolds ultimately was diagnosed with sepsis and underwent an exploratory laparotomy. She also suffered blindness in both eyes due to an allergic reaction.

Further facts regarding the underlying medical-malpractice allegations are irrelevant to the parties' arguments on appeal.

¶4.    Reynolds sued St. Dominic's, Allied Emergency Services, PC, and Dr. Bracey.[1]  Prior to trial, the parties entered into a "high/low" settlement agreement, in which Reynolds was guaranteed a certain recovery amount in the event of a defense verdict, while the defendants' liability was capped at a certain amount in the event of a verdict for Reynolds.  The parties detailed their agreement in a series of emails, and the relevant provisions are as follows:

> This is to confirm that we have had many discussions by phone since the below offer was made.  We have now reached settlement agreements with each of you as follows: . . . Bracey and Allied combined agree to a high of [redacted by parties] and a low of [redacted] regardless of the ultimate outcome at trial. The ultimate high, low, or any verdict amount in between will be paid within 10 days of the conclusion of trial.

> No party will retain any appeal rights.

> This is to confirm our discussion today wherein we clarified that if there is a mistrial for some reason, we agree that the high/low agreement would remain in place until we achieve a verdict.

> We agreed that mis-trial or hung jury won't = low, but will still leave the high low in place until a verdict is rendered.  But I think we are all on the same page and understand now.  The low would be paid within 10 days of when this trial finishes, however it finishes, and the high would still be available should there be another trial.

And in some earlier emails, Reynolds's counsel indicated that they "still [preferred] a simple high/low that ends the litigation at the announcement of a verdict," and that neither party

---

[1]Reynolds settled with St. Dominic's prior to trial, and it is not a party to this appeal.

should be given a "consequence free ability to drag [the case] out past a verdict when we already agreed on the high/low amount."

¶5.    The trial judge summarized the relevant trial events in one of his post-trial orders:

A jury trial on this matter was held during the week of May 6, 2013. On May 10, 2013, the fifth and final day of the trial, the jury instructions were read by the Court to the jury. The instructions that were read into the record and to the ladies and gentlemen of the jury consisted of the correct and complete set of jury instructions for this case. This set of instructions was the result of an earlier charge conference with the Court and counsel [for] the parties. During the charge conference, certain instructions were given, refused, revised and withdrawn. After the Court's reading of the jury instructions, the parties gave closing arguments and the case was submitted to the jury for deliberation. The parties were permitted to use the jury instructions in closing argument, as needed. Unbeknownst to the Court, the official jury instructions and two evidentiary exhibits were not returned to the court reporter for submission to the jury during deliberations. The missing jury instructions and the exhibit[s] were later located at Plaintiff counsel's office.

The jury returned a verdict for the defense in this case.[2] After the jury was dismissed, the Court's clerk was collecting the jury instructions for filing, and noticed that the incorrect set of jury instructions was in the jury room. The clerk notified the judge, who immediately notified the parties. The Plaintiff requested a mistrial, and the Court required written submissions from all parties on the issue. During the inquiry into the mistake, the court learned that the jury apparently requested the written instructions from the Court's bailiff. The Court's bailiff went into the courtroom to retrieve them, and the original instructions were not in the customary location. The bailiff located some instructions near the clerks' desk, and provided that set to the jury. Unfortunately, the set provided consisted of only the defense proposed instructions, including instructions that had been refused during the charge conference.[3]

---

[2]The unanimous verdict read: "We the jury find for the defendants not guilty of negligence."

[3]The instructions delivered to the jury included a cover page entitled "Jury Instructions of Defendants Allied Emergency Services, PC and Dr. Paul Bracey." Immediately following the cover page, the first instruction read: "The Court instructs the jury that you must return a verdict for the defendants." The instructions also included a form

As recounted above, the trial judge called the parties back to the courthouse on the afternoon of May 10 after learning about the mistake. Reynolds's counsel moved for a mistrial, and the trial judge took the motion under advisement and asked the parties to file written motions with appropriate briefs.

¶6. Reynolds argued in her motion that Uniform Rule of Circuit County Court Practice 3.12 mandated a mistrial, as the "trial . . . clearly [could not] proceed in conformity with the law." Reynolds also argued that it was "clear that prejudice and unfairness occurred during and throughout deliberations," and that the law presumes that jurors follow the instructions they are given.[4] The defendants responded and argued that a mistrial was no longer available after a verdict had been rendered, and that Reynolds was entitled to no relief because the actions of her trial team caused the mistake.[5] They also argued that Reynolds had not been prejudiced by the incorrect instructions, attaching two affidavits from jurors who said that they understood they could vote for either party. In rebuttal, Reynolds provided affidavits from two other jurors who said that they were inclined to find for her when deliberations began, and that they "relied" on the jury instructions they received in determining their verdict.

---

of the verdict instruction in the event of a defense verdict, but of course, no matching instruction for the plaintiff. None of the Court's instructions were included.

[4]Reynolds attached affidavits to her motion from two members of her trial team. Paralegal Caroline Boyd stated that they did not pack up any materials from the courtroom until after the verdict was read, but that the correct instructions and the two missing exhibits later were found in their files. And IT Specialist Mac West testified similarly.

[5]The defendants attached two affidavits to their response that contradicted Reynolds's trial team's version of how and when the correct jury instructions were misplaced.

5

¶7.     After a hearing, the trial judge entered a final judgment reflecting the jury's defense verdict. He also entered an order denying Reynolds' motion for a mistrial, finding that "the trial in this matter is in fact over." But in that same order, the trial judge granted Reynolds a new trial on his own motion. The trial judge said that he felt "compelled to grant a new trial on [his] own initiative, pursuant to MRCP 59(d)." He found that "a refused preemptory [sic] instruction, was mistakenly provided to the jurors, and the same has the likelihood of being confusing and prejudicial."[6]

¶8.     After Reynolds filed a motion for trial setting, the defendants filed a motion asking the trial court to enforce the high/low settlement agreement and to dismiss the action with prejudice. The defendants argued that "the parties' high-low agreement cut off the right of either party to pursue post-trial remedies . . . the possibility of a mistrial was specifically considered by the parties. But the agreement also specifically recognized that neither side retained the right to appeal and, by necessity, gave up any post-trial remedies." The defendants pointed out Reynolds's counsel's emphasis at the May 10 hearing that trial was still ongoing[7] as support for its interpretation and attached the emails detailing the high/low agreement.

----

[6]The trial judge said specifically in his order, though, that he reached his ruling "without consideration of the juror affidavits submitted in conjunction with briefing on the Plaintiff's Motion for Mistrial."

[7]Reynolds's counsel had argued: "This is critical, Your Honor. With all due respect, I take issue with whether this is a post-trial proceeding. It is the plaintiff's – and this – it's critical for a very important reason, Your Honor. I – I would argue to [the] Court that we are still in the midst of a trial."

6

¶9. Reynolds argued in response that the high/low agreement "was void of any specific language addressing an order of a new trial or [JNOV]," and that a new trial was available to the parties under the agreement. Reynolds also argued that the parties "did not choose to forego available procedural relief before the trial court . . ."

¶10. After a hearing, the trial judge entered an order granting the defendants' motion to enforce settlement. The trial judge began his order by framing the issue presented to him in the defendants' motion:

> In that motion, for the first time, the Court learned of a purported settlement agreement, known as a "high-low agreement," reached by the parties prior to the end of the trial. The parties do not dispute that a settlement agreement was reached – the dispute lies with the reach of the agreement and the parties' intent concerning post-trial procedure. Accordingly, the Court must determine, among other things, whether its ruling ordering a new trial, *sua sponte*, pursuant to MRCP 59(d) is affected by the agreement, which was unknown to the Court at the time of its order.

In short, as the trial judge said, he was to "determine whether, either from the face of the contract or from applicable contractual canons or parol evidence, the parties intended to preclude all post-trial motions."

¶11. The trial judge then found that the term "appeal rights" was undefined in the parties' agreement, and that their intent concerning that term was unclear. Specifically, he found that the statement "no party will retain any appeal rights" was "ambiguous as it relates to circuit court post-trial proceedings." After considering what he termed "parol evidence"—namely, all the emails exchanged and the parties' arguments at the hearings—he concluded that

> In considering the "totality of the circumstances" and by focusing on what the parties actually said, as the law requires, the Court finds that the parties' intent

7

in reaching this "high-low settlement" was to preclude any post-verdict proceedings, including motions for new trial.

As such, the trial judge continued

> Due to this Court's finding that no party was permitted to bring a Motion for New Trial under the terms of the settlement agreement, the Court, likewise, cannot enforce a Rule 59(d) order as there can be no reason "which may have been cited by a party" to base it on. Quite simply, the parties' agreement prohibited them from filing this type of motion, and that same prohibition also precludes the enforcement of the Rule 59(d) Order of this Court.[8]

Based on this reasoning, the trial judge granted the defendants' motion, dismissed the action with prejudice, and declared his previous order granting a new trial null and void.

¶12. Reynolds filed a motion for reconsideration, which the trial judge denied. Reynolds now appeals to this Court and presents five issues:

1. **The verdict was void because the jury received the wrong instructions;**

2. **The wrong instructions were an extraneous influence warranting immediate mistrial;**

3. **There was no appeal that triggered enforcement of the agreement;**

4. **The parties never agreed to be bound by an improper verdict; and**

5. **An agreement cannot bind parties to an improper verdict.**

We find issues one and three dispositive, and we decline to address Reynolds's remaining issues. So ultimately, we reverse for two reasons: first, because the jury verdict lacked validity and, as such, no "verdict" has been "achieved," leaving the condition precedent to

---

[8]Mississippi Rule of Civil Procedure 59(d) provides, in pertinent part: "Not later than ten days after entry of judgment the court may on its own initiative order a new trial *for any reason for which it might have granted a new trial on motion of a party*." (Emphasis added.)

the high/low agreement unsatisfied; and second, because the term "appeal rights" is not ambiguous, and nothing else in the agreement prevents a new trial.

## DISCUSSION

**1.     The verdict was obtained after the jury was provided incorrect instructions.**

¶13.    Reynolds argues that the "jury's verdict in this case was completely void because it was based upon the wrong set of instructions." And as such, argues Reynolds, the trial judge should have granted a mistrial. While we agree with Reynolds's substantive arguments, we do not agree that a mistrial was appropriate after the jury had rendered its verdict. So in short, we agree with the trial judge's initial order denying a mistrial but granting new trial.

¶14.    Jury instructions must "inform the jury sufficiently *of the applicable law*." ***Miss. Valley Silica Co., Inc. v. Eastman***, 92 So. 2d 666, 668 (Miss. 2012) (emphasis added). "A party is entitled to have instructions given that are supported by sufficient, credible evidence and *that accurately state the law of the case*." ***Id.*** at 669 (emphasis added). This Court has reversed where a trial judge "eviscerated" a party's case by denying its theory instructions. ***Id.*** And as this Court repeatedly has stated, "Generally speaking, our law *presumes* that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do." ***Young v. Guild***, 7 So. 3d 251, 263 (Miss. 2009) (emphasis added).

¶15.    This Court has used the term "void" to describe verdicts rendered when certain "irregularities" are present:

> Whilst the law is rigidly vigilant in guarding and preserving the purity of jury trials, yet it will not for light or trivial causes, impugn the integrity of juries, or question the solemnity and impartiality of verdicts. But if the verdict be

given under circumstances which might *conduce to an improper influence, or the natural tendency of which might be to produce bias or corruption, it cannot then be said to be above suspicion; and if it be not, it must fall short of that perfection which the law requires* . . . "it is a well settled rule of practice incident to all jury trials, that after the jury are charged and have left the court to consider of their verdict, they are to be kept by themselves, without refreshment, and without communication with others, until they have agreed. Any departure from this rule is an irregularity. But it is not every irregularity which will *render the verdict void*, and warrant setting it aside. This depends upon another and additional consideration, namely, *whether the irregularity is of such a nature as to affect the impartiality, purity and regularity of the verdict.*"

. . . .

Common reason dictates to us what might "affect the impartiality, purity and regularity" of a verdict, and whatever might have that effect, will *vitiate it* . . . when there is an irregularity which may affect the impartiality of the proceedings, as where [the jury has] had communications not authorised [sic], there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction and relief is by undoing what is thus improperly and may have been corruptly done

. . . .

***Hare v. State***, 5 Miss. 187, 192-94 (1839) (emphasis added) (citations omitted).

¶16.    It is difficult to imagine a scenario more prejudicial to a party than what occurred here.    The jury mistakenly was provided a copy of the defendants' proffered instructions—some of which had been withdrawn, and some of which had been outright denied—and the first instruction they read told them to find for the defendants.  What is more, the bailiff—an extension of the court and trial judge—provided the instructions, which "carries with it the imprimatur of authority."  ***Collins v. State***, 701 So. 2d 791, 795 (Miss. 1997).  We agree with the trial judge that extraneous material "was mistakenly provided to the jurors, and the same has the likelihood of being confusing and prejudicial."

¶17.    We also agree with the trial judge that a mistrial was unavailable, because the trial was "in fact over." Reynolds relies chiefly on Uniform Rule of Circuit and County Court Practice 3.12 in support of her argument that a mistrial was appropriate. But we find no support for Reynolds's argument in the plain language of the rule:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.
>
> Upon motion of a party or its own motion, the court may declare a mistrial if:
>
> 1. The trial cannot proceed in conformity with law; or
> 2. It appears there is no reasonable probability of the jury's agreement upon a verdict.

URCCC 3.12. Neither party is claiming here that misconduct occurred. And once the jury has returned a verdict, there is no longer a "trial" that "cannot proceed in conformity with the law." So the trial judge was correct to deny a mistrial, but to grant Reynolds a new trial.

¶18.    The defendants devote several pages of their brief to the argument that Reynolds should get no relief because the proper jury instructions ultimately were found in her attorneys' files. But this Court repeatedly has said that it is the trial court's responsibility to instruct the jury. *See, e.g.*, **Mississippi Valley Silica Co., Inc. v. Eastman**, 92 So. 3d 666, 669 (Miss. 2012) ("But another principle, ingrained in our law, places upon the trial judge the ultimate duty to instruct the jury properly."); **Kolberg v. State**, 829 So. 2d 29, 45 (Miss. 2002) ("There is no doubt that the trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even *sua sponte*."). That the

11

correct instructions later were found in Reynolds's attorneys' materials does not excuse the court from its responsibility to ensure that the proper instructions were provided to the jury

¶19.   So in sum, we find that the jury's verdict here was vitiated.  As such, the high/low agreement has no effect yet, because the condition precedent—a jury verdict—has not occurred.  So we reverse the trial judge's decision to void his initial order and we remand the case with instructions to the Court to reinstate that order, which denied a mistrial but granted Reynolds a new trial.

### 2.    The phrase "appeal rights" is not ambiguous.

¶20.   Reynolds argues also that the plain language of the agreement did not prohibit a new trial.  Specifically, Reynolds argues that "[b]ecause the new trial ordered in this case is not an 'appeal,' it could not have been barred by the agreement."  Reynolds also argues that "[o]nly through dramatically changing the literal definition of the word 'appeal' could the trial court reach the result that a new trial would be prohibited."

¶21.   As discussed above, the parties agreed that none of them would "retain any appeal rights."[9]  The trial judge found this phrase ambiguous and ultimately concluded that the parties intended to preclude any post-trial proceedings.  But we find that the phrase "appeal rights" is unambiguous.  And as such, the trial judge erred when he considered what he termed "parol evidence"—including the emails exchanged between the parties (some of which predated the actual agreement), and their arguments at the various hearings.

---

[9]We note that the parties' arguments regarding the phrase "appeal rights" focused on post-trial remedies before the trial court.  The defendants do not argue that this appeal is barred by the agreement.

12

¶22. It is well-settled that the first step in contract interpretation is to determine whether the contract is ambiguous. *McFarland v. McFarland*, 105 So. 3d 111, 1119 (Miss. 2013). If a contract is not ambiguous, "then it **must** be enforced as written." *Id.* (emphasis added). In this step, the Court analyzes the "express wording of the contract and enforces the plain meaning where there is no ambiguity." *Id.* Webster's Dictionary defines "appeal" as "a legal proceeding by which a proceeding is brought *from a lower to a higher court* for rehearing." *Appeal*, Webster's Dictionary *(*3d ed. 1976*)* (emphasis added). And Black's Law Dictionary defines it as "a proceeding undertaken to have a decision reconsidered by a *higher authority*; esp., the submission of a lower court's or agency's decision *to a higher court for review and possible reversal*." *Appeal*, Black's Law Dictionary (2d pocket ed. 2001) (emphasis added).

¶23. There is no ambiguity in the phrase "appeal rights." And we see no other restrictions and/or waivers in the parties' agreement that prohibit a new trial. On the contrary, the parties twice contemplated the possibility of another trial.[10] As such, we find that the trial judge erred when he granted the defendants' motion to enforce settlement and reversed his prior order granting a new trial.

## CONCLUSION

¶24. We reverse for two reasons: first, because the jury verdict lacked validity and, as such, no "verdict" has been "achieved," leaving the condition precedent to the high/low agreement

---

[10]"[W]e clarified that if there is a mistrial for some reason, we agree that the high/low agreement would remain in place *until we achieve a verdict*." (Emphasis added.) "But I think we are all on the same page and understand now. The low would be paid within 10 days of when this trial finishes, however it finishes, and the high would still be available *should there be another trial*." (Emphasis added.)

13

unsatisfied; and second, because the term "appeal rights" is not ambiguous, and nothing else in the agreement prevents a new trial. We therefore reverse the trial judge's decision to void his initial order and we remand the case with instructions to the trial court to reinstate that order, which denied a mistrial but granted Reynolds a new trial.

¶25.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**