# IN THE SUPREME COURT OF IOWA

No. 17–1825

Filed June 14, 2019

**SHELLI R. FREER,** Individually and as Administrator of the **Estate of NICOLE J. SANSOM** and **MICHAEL SANSOM**, Individually,

Appellants,

vs.

**DAC, INC.** d/b/a **PRAIRIE HOUSE,**

Appellee.

---

Appeal from the Iowa District Court for Jackson County, Mark J. Smith, Judge.

The plaintiffs challenge the district court's grant of motion to enforce settlement agreement and dismissal of plaintiffs' posttrial motion as moot. **AFFIRMED.**

Thomas W. Kyle of Hupy and Abraham, S.C., P.C., Milwaukee, WI, for appellants.

Patrick L. Woodward and Ryan F. Gerdes of McDonald, Woodward & Carlson, P.C., Davenport, for appellee.

**CHRISTENSEN, Justice.**

Plaintiffs appeal the district court's dismissal of their posttrial motion. Upon review, we consider plaintiffs' posttrial motion waived. Accordingly, plaintiffs did not preserve any issues for appellate review. We affirm the district court's order entering judgment for defendant.

## I. Background Facts and Proceedings.

A jury trial was held on the wrongful death of Nicole Sansom. During deliberations, counsel for each party entered into a high-low settlement agreement. The written agreement consisted of the plaintiff Freer[1] emailing a one-liner to the defendant DAC, Inc. and DAC emailing a one-liner in response:

Freer: "They agree to the high low of 100k to 1 million."

DAC: "Confirmed. Now we wait and see what the jury does."

Later that same day, the jury determined DAC was not liable and awarded no damages. On July 25, 2017, the district court entered judgment for DAC. On August 2, Freer filed a timely posttrial combined motion for new trial and change of venue. *See* Iowa R. Civ. P. 1.1007 (posttrial motion for new trial must be filed within fifteen days after filing of the verdict). The posttrial motion alleged violation of a granted motion in limine, errors by the district court in denying Freer's motions for mistrial and failing to notify counsel of jury communications, and undue influence of DAC over the jury. DAC resisted and filed a motion to enforce the high-low settlement agreement and to strike Freer's posttrial motion.

On October 13, the district court held a hearing on the motions. It granted DAC's motion to enforce the settlement agreement and deemed Freer's posttrial motion moot. The district court pronounced this

---

[1]Because Shelli Freer and Michael Sansom are in the same position in this appeal, we will refer to them both as "Freer."

judgment from the bench. Nonetheless, on November 7, before the entry of a written order on the posttrial motion, Freer appealed.[2] DAC timely cross-appealed the district court's judgment. *See* Iowa R. Civ. P. 6.101(2)(*b*) (notice of cross-appeal must be filed within ten days after the filing of a notice of appeal). On appeal, Freer argues it was error for the district court to determine the posttrial motion as moot. She also asserts the high-low settlement agreement does not preclude the district court from hearing arguments and rendering a determination as to the propriety of the posttrial motion. Freer lastly contends the district court abused its discretion in denying the motions for mistrial. DAC argues the district court erred in denying its motion to exclude expert testimony and in granting Freer's motion in limine.

We retained the appeal. However, we determined the jurisdictional requirement of Iowa Rule of Appellate Procedure 6.101(1)(*b*) was not met. Rule 6.101(1)(*b*) requires "[a] notice of appeal must be filed within 30 days after *the filing of the final order or judgment.* Iowa R. App. P. 6.101(1)(*b*) (emphasis added). We previously addressed this jurisdictional requirement in *Lutz v. Iowa Swine Exps. Corp.*, 300 N.W.2d 109, 112 (Iowa 1981). We concluded "an oral order may be probative evidence as to the effective time of an order, but until it is in some manner reduced to writing and filed there is no competent evidence of the rendition of such order." *Id.* To support this conclusion, we cited caselaw stating "[t]he reason for requiring orders to be made in writing and recorded is that the court might change its ruling before the order is signed and entered." *Id.* at 111–12.

---

[2]Freer's posttrial motion for new trial tolled the thirty-day period within which to file an appeal. Iowa R. App. P. 6.101(1)(*b*) (providing a notice of appeal must be filed thirty days after the filing of the order on the motion for new trial); *Lutz v. Iowa Swine Exps. Corp.*, 300 N.W.2d 109, 110 (Iowa 1981).

The jurisdictional rule at issue in Freer's appeal expressly identified that a final order or judgment must be *filed* before an appeal can be pursued. *See* Iowa R. App. P. 6.101(1)(*b*). Accordingly, we remanded to the district court for the limited purpose of entry of a written order, nunc pro tunc, on the posttrial motion.[3] On February 15, 2019, the district court filed a written order that enforced the high-low settlement agreement and denied Freer's posttrial motion.[4]

## II. Standard of Review.

A motion to enforce a settlement agreement is reviewed for correction of errors at law. *Wright v. Scott,* 410 N.W.2d 247, 249–50 (Iowa 1987). "The district court has authority to enforce settlement agreements made in a pending case." *Gilbride v. Trunnelle*, 620 N.W.2d 244, 249 (Iowa 2000).

## III. Analysis.

Upon review, we consider Freer's posttrial motion waived. A moving party is deemed to have waived and abandoned a posttrial motion when that party files a notice of appeal. *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000); *In re Estate of Herron*, 561 N.W.2d 30, 32 (Iowa 1997). Freer is the same party who filed the posttrial motion and who filed the notice of appeal. Therefore, Freer is deemed to have waived and abandoned her posttrial motion. *See Lemke v. Albright*, 383 N.W.2d 520, 522 (Iowa 1986) (reasoning if the abandonment of a posttrial motion perfected the appeal, logically an appeal is not abandoned by relying on a posttrial motion to extend time for appeal beyond the thirty-day period). A

---

[3]*See* Iowa R. App. P. 6.1004 ("The appropriate appellate court may on its own motion . . . remand a pending appeal to the district court, which shall have jurisdiction to proceed as directed by the appellate court.").

[4]On February 18, 2019, the district court entered a second written nunc pro tunc order to correct a typographical error in the February 15 order.

jurisdictional problem will not arise because the appeal is considered taken as a matter of right. *IBP, Inc.*, 604 N.W.2d at 628. "An appeal is taken and perfected by filing a notice of appeal with the clerk of court where the order, judgment or decree was entered." *Wolf v. City of Ely*, 493 N.W.2d 846, 848 (Iowa 1992) (en banc). In filing the notice of appeal, Freer divested the district court of jurisdiction over the posttrial motion. *See IBP, Inc.*, 604 N.W.2d at 628 ("Additionally, once the appeal is perfected, the district court loses jurisdiction to rule on the motion, and any such ruling has no legal effect."). "The general rule that the district court loses jurisdiction when an appeal is perfected has application when the appeal is taken before the filing of posttrial motions." *Wolf*, 493 N.W.2d at 848 (holding notice of appeal conferred jurisdiction onto the appellate court and divested the district court of jurisdiction to rule on the posttrial motion). Therefore, Freer waived the posttrial motion and divested the district court of jurisdiction. *See IBP, Inc.*, 604 N.W.2d at 628.

Our consideration of the jurisdictional issue is not precluded by the law of the case doctrine, which is "discretionary when applied to a coordinate court or the same court's own decisions." *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998). Further, "[i]ssues such as 'subject matter jurisdiction' or 'appellate jurisdiction' may be 'particularly suitable for reconsideration.' " *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) (quoting 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4478, at 799 n.32 (1981)). This is not a case where the appellate court has rendered a decision and remanded the case to the district court. *See Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016).

## IV. Conclusion.

Given the procedural circumstances of this case, Freer has not preserved any issues for appellate review. We therefore affirm the district

court's July 25, 2017 order entering judgment for DAC.  DAC's cross-appeal is dismissed as moot.

**AFFIRMED.**

All justices concur except Mansfield, J., and Cady, C.J., and Waterman, J., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. The court's decision violates the law of the case, disregards the recent nunc pro tunc order, and leaves the plaintiffs with an undeserved take-nothing judgment. I would reach the merits and affirm the district court's enforcement of the high-low settlement agreement.

### I.  A Quick Recap of the Facts.

The basic facts are these. The case was submitted to the jury on July 18, 2017. While the jury was out, on the morning of July 19, the parties entered into a high-low agreement with $100,000 as the low and $1 million as the high.

Later on the 19th, the jury returned a defense verdict. The district court entered a take-nothing judgment on the jury verdict on July 25.

At this point, the posttrial wheels began to turn. On August 2, the plaintiffs moved for a new trial and for change of venue. On August 10, the defendant DAC, Inc. filed a resistance to the plaintiffs' posttrial motions and a motion to enforce the high-low settlement. On August 16, the plaintiffs resisted DAC's motion to enforce the settlement.

A hearing on these motions took place on October 13. The district court stated that the high-low agreement controlled and that it was not going to rule on the plaintiffs' posttrial motions because it considered them moot. The court also put on the record that when it had notified plaintiffs' counsel of the defense verdict, counsel had responded, "Thank God we entered into a high-low settlement agreement."

No written order was entered following the October 13 hearing. However, the plaintiffs filed a notice of appeal on November 7. The appeal proceeded for the next year and three months.

On February 1, 2019, after we had heard oral argument on the appeal, we entered the following order:

> Upon consideration, the court concludes it lacks jurisdiction to hear the appeal because no written ruling on the parties' posttrial motions was filed. *See* Iowa R. App. P. 6.101(1)(*b*). In accordance with rule 6.1004, this matter is remanded to the district court for the limited purpose of the entry of a written ruling, *nunc pro tunc*, on the parties' posttrial motions.

On February 18 and 19, the district court entered a nunc pro tunc written order granting DAC's motion to enforce settlement and determining that the plaintiffs' posttrial motions were moot.

The parties' (and my) expectation was that the court would now reach the merits and determine whether the high-low agreement had indeed mooted the posttrial motions. Instead, the court now treats everything that has happened in this case since July 25, 2017, as a nonevent. I disagree.

**II. The Majority Disregards Both Law of the Case and the Nunc Pro Tunc Order.**

For one thing, the law of the case applies. Correct or not, we made a ruling on February 1. In reliance on that ruling, the district court entered a nunc pro tunc order. Upon return of the case to our court, the February 1 ruling controls. *See Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016) ("It is a familiar legal principle that an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case.").

Furthermore, this is more than a typical law-of-the-case scenario. The situation actually described in the majority opinion—i.e., a party filing an appeal during the pendency of posttrial motions—*no longer exists*. The district court has entered a nunc pro tunc order, thus fixing the very

absence of a written order the majority complains about. The entry of the nunc pro tunc order moots the issue raised here by the majority. In *Wirtanen v. Provin*, the trial court entered a nunc pro tunc order while the appeal was pending before us in January 1980. *See* 293 N.W.2d 252, 255 (Iowa 1980). The nunc pro tunc order by its terms related back to December 1978, prior to the filing of the notice of appeal. *Id.* We held that for purposes of determining jurisdiction, we should regard the nunc pro tunc order as having been entered before the notice of appeal. *Id.* at 256.

Additionally, the majority opinion leads to an impractical and potentially unfair result. The plaintiffs should receive *either* $100,000 *or* an opportunity to challenge the jury verdict in this case. Yet the court's decision leaves them with neither by affirming a take-nothing judgment.

Despite the majority's decision, one hopes that DAC will honor its view of the high-low settlement agreement and pay the plaintiffs $100,000. But if DAC doesn't, what happens next? The plaintiffs would have to file a new lawsuit to enforce the settlement agreement and would now face various obstacles in doing so. For example, does res judicata bar a brand new lawsuit? Or suppose DAC decides to adopt the plaintiffs' view of the high-low settlement in the wake of the majority's ruling.

Moreover, even if the majority were correct that the only appeal before us is from the original take-nothing judgment, the majority would still need to address the plaintiffs' argument on pages 30–34 of their brief that the district court abused its discretion in denying a mistrial. Appellant's Br. at 30–34. This argument is *not* based on the high-low agreement or the posttrial motions. It is an argument that applies to the original July 25, 2017 judgment entered on the jury verdict. So under the majority's logic, it has to be considered.

For all these reasons, I would reach the merits of whether the high-low settlement agreement is binding.

**III. The High-Low Agreement Is Enforceable Under These Specific Circumstances.**

Turning to whether this high-low agreement precludes posttrial motions, there are several relevant precedents from other jurisdictions.

In *Smith v. Settle*, the Virginia Supreme Court held that a high-low agreement foreclosed the plaintiffs from challenging jury instructions posttrial. 492 S.E.2d 427, 429 (Va. 1997). It then determined that the high-low agreement should be set aside because the plaintiffs had repudiated it by refusing the tender of the "low" figure of $350,000. *Id.* The court reasoned,

> Finding nothing in counsel's statement implying that a "properly instructed" jury was part of the agreement or that either party could seek post-verdict relief in the trial court, we will not rewrite the agreement to impose provisions that are neither stated nor implied therein. The plaintiffs' unjustified refusal of the tender prevented performance of the agreement and gave Smith the right to regard it as terminated. Therefore, we conclude that the court erred in enforcing the high-low agreement.

*Id.* (citations omitted).

On the other hand, in *Leibstein v. LaFarge North America, Inc.*, the United States District Court for the Eastern District of New York said in dicta that a high-low agreement entered into during jury deliberations would not bar the plaintiffs from raising juror misconduct during voir dire. 767 F. Supp. 2d 373, 375–78 (E.D.N.Y. 2011). Notably, in that case the basis for challenging the verdict did not come to light until after the jury returned its verdict. *See id.* at 375.

In *Matamoros v. Tovbin*, the New York Appellate Division in a very brief opinion said that the trial court properly considered the merits of

posttrial motions because "[t]he parties' so-called 'high-low' agreement did not expressly prohibit the making of the subject postverdict motion and cross motion." 919 N.Y.S.2d 95, 95–96 (App. Div. 2011).

Finally, in *Reynolds v. Allied Emergency Services, PC*, the parties had entered into a high-low agreement prior to trial that expressly provided, "No party will retain any appeal rights." 193 So. 3d 625, 627 (Miss. 2016). The Mississippi Supreme Court held that this agreement did not foreclose the plaintiff from seeking *a new trial*—as opposed to an appeal—based on erroneous jury instructions. *Id.* at 633.

The lesson I draw from this authority is that a high-low agreement is just like any other contract, and it is therefore difficult to make blanket generalizations. Sometimes the high-low agreement has precluded posttrial motions; sometimes it hasn't. The proper approach for a reviewing court is to apply standard principles of contract interpretation to the specific agreement at hand. *See, e.g.*, Restatement (Second) of Contracts §§ 202, 203, 204, 206, 207, at 86–107 (Am. Law Inst. 1981). Here, several factors favor DAC's position that the high-low precludes the plaintiffs' posttrial motions.

First, the agreement was entered into during jury deliberations. At that time all the grounds for the subsequently filed posttrial motions were already known. This is not a case where the agreement was entered into *first* and then the grounds for the posttrial motions appeared *later*. In this circumstance, it would have been reasonable for the plaintiffs' counsel to spell out an exception to the high-low that he already knew about.

Second, the agreement—such as it was—was drafted by the plaintiffs' counsel, not DAC's counsel.

Third, as the district court noted, when told of the jury's verdict, the plaintiffs' counsel said, "Thank God we entered into a high-low settlement agreement."

Accordingly, I agree with the district court's interpretation of this high-low agreement and would affirm the district court's nunc pro tunc order.

Cady, C.J., and Waterman, J., join this dissent.